IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JAQUINE ROBERTO TAYLOR, #167813,    )
                                    )
                                    )
            Plaintiff,              )
                                    )
        v.                          )        CASE NO. 2:14-CV-345-WHA
                                    )                (WO)
                                    )
KIM THOMAS, et al.,                 )
                                    )
            Defendants.             )

## RECOMMENDATION OF THE MAGISTRATE JUDGE[1]

## I. INTRODUCTION AND PROCEDURAL HISTORY

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed by

Jaquine Roberto Taylor ("Taylor"), an HIV-positive state inmate, on May 9, 2014.[2]

Taylor names Kim Thomas, the former commissioner of the Alabama Department of

Corrections, Jefferson Dunn, the current commissioner of the Alabama Department of

Corrections, and Dewayne Estes, a warden at Limestone Correctional Facility during the

time relevant to the complaint, as defendants.[3]  Taylor alleges that the actions of the

---

[1]All documents and attendant page numbers cited herein are those assigned by this court in the docketing process.

[2]The Clerk stamped the complaint "received" on May 12, 2014.  Taylor, however, executed the complaint on May 9, 2014, *Doc. No. 1* at 4, and this is the earliest date he could have placed the complaint in the prison mail system.  A *pro se* inmate's complaint is deemed filed the date it is delivered to prison officials for mailing.  *Houston v. Lack,* 487 U.S. 266, 271-272 (1988); *Adams v. United States*, 173 F.3d 1339, 1340-1341 (11th Cir. 1999); *Garvey v. Vaughn*, 993 F.2d 776, 780 (11th Cir. 1993).  Thus, the court considers May 9, 2014 as the date of filing.

[3]"[W]hen officials sued in [their official] capacity in federal court die or leave office, their successors automatically assume their roles in the litigation."  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  Thus, with respect to Taylor's claims against former commissioner Thomas in his official capacity, current commissioner Jefferson Dunn is the appropriate defendant.  As to the personal or individual capacity claims lodged against defendant Thomas for

1

defendants in enforcing policies directed at HIV-positive inmates violated Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, § 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794, his right to be free from cruel and unusual punishment as guaranteed by the Eighth Amendment, and his right to privacy under the Fourteenth Amendment. *Doc. No. 1* at 7. A thorough review of the complaint indicates that Taylor contends these violations began upon his initial incarceration within the Alabama prison system in 2009 and continued through the filing of the complaint. Taylor seeks a declaratory judgment, injunctive relief, compensatory damages in the amount of $150,000, punitive damages in the amount of $200,000 and any other relief the court deems just. *Doc. No. 1* at 9.[4]

The defendants filed a special report, supplemental special report and supporting evidentiary materials addressing Taylor's claims for relief. After receipt of the defendants' initial report, the court issued an order directing Taylor to file a response to the report and advising him that such response should include affidavits or statements made under penalty of perjury and other relevant evidentiary materials. *Order of July 3, 2014 - Doc. No. 13* at 2. This order specifically advised the parties that unless "**sufficient**

---

actions/conditions which occurred during his tenure as Commissioner, Thomas remains a proper defendant. *Walton ex rel. R.W. v. Montgomery County Bd. of Educ.*, 371 F. Supp. 2d 1318, 1320 n.1 (M.D. Ala. 2005) (new official substituted for official capacity claim but not for individual capacity claim).

[4]Taylor does not request nominal damages and the large amount of compensatory and punitive damages requested is wholly inconsistent with a request for nominal damages. *See Carey v. Piphus*, 435 U.S. 247, 266-267 (1978) (holding that nominal damages are one dollar); *see also Ringgold v. Federal Bureau of Prisons*, No. 07-2733, 2007 WL 2990690, at *5 & n. 5 (D.N.J.2007) (unpublished) (dismissing the prisoner's complaint under § 1997e(e) because the alleged injury was *de minimis* and his request for compensatory damages in a large sum indicated no interest in nominal damages). The court therefore does not construe the complaint to seek nominal damages. *See Magwood v. Sec'y Fla. Dept. of Corr.*, 652 F. App'x 841, 845 (11th Cir. 2016) ("Although [the inmate's] complaint did not specifically request nominal damages, he did request appropriate relief generally, and the district court should consider whether nominal damages are available under his original complaint.").

**legal cause"** is shown within fifteen (15) days of entry of this order "**why such action should not be undertaken**, . . . the court may at any time [after expiration of the time allowed for the plaintiff to file his response] and **without further notice to the parties** (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." *Id*. at 2-3. Pursuant to this order, the court deems it appropriate to treat the defendants' initial report as a motion for summary judgment. Thus, this case is now pending on the defendants' motion for summary judgment.

Upon consideration of this motion, the evidentiary materials filed in support thereof, the sworn complaint and the plaintiff's responses, including supporting affidavits, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th  Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law.").[5]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (moving party has initial burden of showing there is no genuine dispute of material fact for trial).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322-324.

The defendants have met their evidentiary burden.  The burden therefore shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled

---

[5]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id*.  "'Shall' is also restored to express the direction to grant summary judgment."  *Id*.  Despite these stylistic changes, the substance of Rule 56 remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

to it."); *Jeffery*, 64 F.3d at 593-594 (internal quotation marks omitted) (Once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact.). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Education for Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007). In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). To proceed beyond the summary judgment stage, an inmate-plaintiff is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary

judgment may be granted." *Anderson*, 477 U.S. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (A plaintiff's "conclusory assertions . . ., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment. . . ."); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries,*

*Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (summary judgment appropriate where no genuine dispute of material fact exists). At the summary judgment stage, this court must "consider all evidence in the record . . . [including] pleadings, depositions, interrogatories, affidavits, etc. -- and can only grant summary judgment if everything in the record demonstrates that no genuine [dispute] of material fact exists." *Strickland v. Norfolk Southern Railway Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken

as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, Taylor's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record. After such review, the court finds that Taylor has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants.

## III. DISCUSSION[6]

### A. Relevant Facts and Claims for Relief

Taylor entered the state prison system in March of 2009. At this time, all male inmates diagnosed with HIV were incarcerated at Limestone Correctional Facility ("Limestone") and segregated from the facility's general population. In accordance with ADOC policy, HIV-positive inmates were forced to wear a particular color armband that identified them as HIV-positive. For the time relevant to the complaint, Taylor was an HIV-positive inmate incarcerated at Limestone. Taylor initiated this case on May 9, 2014.[7]

In the instant complaint, Taylor asserts that in *Henderson v. Thomas*, 913 F. Supp.2d 1267 (M.D. Ala. 2012), the Honorable Myron H. Thompson ruled "that ADOC policy on segregation [of HIV-positive inmates] did in fact violate the ADA (American Disability act) and 504 rehabilitation act." *Doc. No. 1* at 6.[8] Taylor alleges that from the

---

[6]In accordance with well-settled law, the court limits its review to the allegations set forth in the complaint. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment."); *Ganstine v. Secretary, Florida Dept. of Corrections*, 502 F. App'x. 905, 909-910 (11th Cir. 2012) (plaintiff may not amend complaint at the summary judgment stage by raising a new claim or presenting a new basis for a pending claim); *Chavis v. Clayton County School District*, 300 F.3d 1288, 1291 n. 4 (11th Cir. 2002) (court refused to address a new theory raised during summary judgment because the plaintiff had not properly amended the complaint).

[7]By June 7, 2014, Taylor had been transferred to Easterling Correctional Facility. After his transfer, Taylor attempted to amend the complaint to raise claims regarding actions taken against him by correctional officials at Easterling. *See Doc. No. 17.* The court denied this motion and advised Taylor that "if he seeks to challenge the actions referenced in the motion to amend he may do so by filing a separate 42 U.S.C. § 1983 action with the court." *Doc. No. 18.*

[8]In *Henderson*, a class action comprised of all current and future HIV-positive inmates incarcerated in the Alabama prison system seeking declaratory and injunctive relief, this court ruled that correctional officials violated the ADA and RA by failing to provide an individual assessment of HIV-positive prisoners in its segregated housing, job assignments and other treatment of these inmates. *Henderson*, 913 F. Supp.2d at 1288-1304. This court further stated it "cannot overemphasize that it is not holding that all HIV-positive prisoners are entitled to be co-mingled with HIV-negative prisoners." *Id.* at 1318

time of his entry into the state prison system in 2009 until issuance of the Stipulated Order by Judge Thompson in *Henderson* on September 30, 2013 the actions of the defendants in enforcing the policies of segregating HIV-positive inmates into one dorm at Limestone and forcing these inmates to wear an armband indicating their HIV status violated the ADA, RA, Eighth Amendment and Fourteenth Amendment. *Doc. No. 1* at 7. Taylor also makes the conclusory allegation that the violations continued for a period of time after entry of the Stipulated Order in *Henderson*. *Id.* at 2. Taylor "argue[s] [he suffered] injuries because due to plaintiff HIV status he [was] ineligib[le] for transfer[] to another facility . . . [and] barred from consideration . . . [for placement in] Honor dorm[.]" *Doc. No. 1* at 8. The defendants adamantly deny Taylor's allegations and maintain that they fully complied with the terms of Settlement Agreement and Stipulated Order issued in *Henderson*. *Doc. No. 12-2* at 2. In addition, "[o]n August 8, 2013, [defendant] Estes eliminated Limestone Correctional Facility Standard Operating Procedure E-25, 'Inmates with Human Immunodeficiency Virus (HIV)/Acquired Immune Deficiency Syndrome (AIDS),' which provided for the segregation of inmates with HIV or AIDS." *C.S. v. Thomas, et al.*, 2016 WL 2605531, at *3 (N.D. Ala. April 8, 2016), Recommendation of the Magistrate Judge, adopted as opinion of the Court 2016 WL 1746015 (N.D. Ala. May 3, 2016). Finally, with respect to Taylor's claim that even after entry of the Stipulated Order in *Henderson* he remained at Limestone, the Stipulated Order specifically permitted the defendants until November 1, 2014 to complete the re-

assignment of HIV-positive inmates incarcerated at Limestone to other designated correctional facilities. *See Doc. No. 12-4* at 14. Moreover, the Stipulated Order did not require the defendants to place Taylor in a dorm or facility for which he was not eligible under their classification policies or standard operating procedures. The record in this case further demonstrates that correctional officials transferred Taylor from Limestone to Easterling Correctional Facility in early June of 2014, which demonstrates their compliance with the directives of the Stipulated Order as to Taylor.

It is undisputed that Taylor was a member of the plaintiff class in *Henderson* and a party to the Settlement Agreement and Stipulated Order entered by Judge Thompson on September 30, 2013.

> . . . The court in *Henderson* ruled, among other things, that the ADOC violated the ADA and RA when it failed to make individualized determinations before segregating all HIV-positive prisoners into certain dorms, forcing them to wear white armbands, and preventing them from having jobs in food services. *Henderson*, 913 F. Supp. 2d at 1294-98, 1306, 1309-18. As part of the relief in *Henderson*, the parties agreed, among other things, to discontinue separate housing for HIV-positive prisoners; to revise or eliminate HIV-specific rules, policies, protocols, regulations and standard procedures; and to allow ADOC to use armbands to identify inmates housed in particular housing unit so long as the armband does not disclose directly or indirectly a prisoner's HIV status. Doc. No. 18-3, at 3-25. The class in *Henderson* did not seek money damages, and the order in *Henderson* approving the settlement agreement specifically provided that it did not mandate or constitute an obligation for any money payment to inmates. *Id.* at 22. It further indicated:
>
>> Moreover, nothing in this Order creates any basis for any purported or actual Class Member to seek any financial recovery or monetary benefit of any kind from any Defendant, the State of Alabama and/or the Alabama Department of Corrections. Nothing in this Order is intended to curtail the rights of individual prisoners with HIV to bring lawsuits for violations of the Americans with Disabilities Act or the RA, which are not otherwise barred for

reasons unrelated to this Order.

*Id.* The court retained jurisdiction to enforce the order. *Id.* at 23. The parties agreed to submit to mediation of any dispute related to the order, and they agreed that filings related to disputes not first submitted to mediation would be dismissed without prejudice pending the outcome of mediation. *Id.* at 24.

*Hatcher v. Thomas*, Civil Action No. 2:14-CV-67-WHA-WC, Recommendation of the Magistrate Judge - Doc. No. 53 at 6-7, adopted as opinion of the court February 22, 2017 - Doc. No. 54; *see also C.S. v. Thomas, et al.*, 2016 WL 2605531, at *3 (N.D. Ala. April 8, 2016), Recommendation of the Magistrate Judge, adopted as opinion of the Court 2016 WL 1746015 (N.D. Ala. May 3, 2016) ("ADOC and the *Henderson* class of inmates entered into a Settlement Agreement which the court incorporated into its Stipulated Order dated September 30, 2013. Among other things, the Stipulated Order (1) discontinued the ADOC's policy and practice of housing inmates with HIV separately from inmates who do not have HIV, (2) set [June 1, 2014 as the date to begin reassignment of male HIV-positive inmates housed at Limestone and] November 1, 2014, as the date for complete reassignment of HIV-positive inmates without regard to his or her HIV-positive status, consistent with ADOC's classification policies and procedures, and (3) provided for the continued use of armbands to identify inmates housed in particular housing units in any ADOC facility, so long as the use of armbands does not result in a direct or indirect means of disclosure of any inmate's HIV-positive status.") (internal citations to the record omitted).

## B. Individual Capacity Claims for Damages

### 1. Americans with Disabilities Act and Rehabilitation Act[9]

With respect to Taylor's request for monetary damages from the defendants in their individual capacities for alleged violations of the ADA and RA, "there is no individual capacity liability under . . . [either] the ADA or RA." *Badillo v. Thorpe*, 158 F. App'x 208, 211-212 (11th Cir. 2005) (relying on *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2nd Cir. 2001); *Dale v. Moore*, 121 F.3d 624, 627 (11th Cir. 1997) ("[T]he ADA does not provide for individual liability[.]"); *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996) (same). Thus, Taylor is not entitled to the requested relief and the defendants are therefore entitled to summary judgment.

### 2. Constitutional Claims - Qualified Immunity from Damages

Taylor alleges violations of his rights secured by the Eighth and Fourteenth Amendments. The defendants raise the defense of qualified immunity to the constitutional claims lodged against them in their individual capacities. "The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir.2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). "The purpose of the qualified immunity defense is to protect[] government officials from liability for civil damages insofar as their conduct

---

[9]Cases addressing the ADA are also applicable to the RA. *Cash v. Smith*, 231 F.3d 1301, 1305 & n.2 (11th Cir. 2000); *see also Henderson*, 913 F. Supp.2d at 1287.

does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Youmans v. Gagnon*, 626 F.3d 557, 562 (11th Cir. 2010) (internal quotations and citations omitted). "Unless a government agent's act is so obviously wrong, in light of the pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor is immune from suit." *Lassiter v. Ala. A&M University Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994). The Eleventh Circuit has determined that the law is "clearly established" for purposes of qualified immunity "only by decisions of the U. S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." *Jenkins v. Talladega City Bd. of Education*, 115 F.3d 821, 826-827 n.4 (11th Cir. 1997).

"To receive qualified immunity, the government official must first prove that he was acting within his discretionary authority." *Gonzalez*, 325 F.3d at 1234. The evidence before the court establishes that defendants Thomas and Estes were acting "within the scope of [their] discretionary authority," so "the burden shifts to [Taylor] to show that qualified immunity is not appropriate." *Id.*; *see also Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1158 (11th Cir. 2010). To meet this burden, Taylor must prove both that "(1) the defendants violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir.2004); *Youmans*, 626 F.3d at 562 (citation omitted) ("[O]nce a defendant raises the defense [of qualified immunity and demonstrates he was

acting within his discretionary authority], the plaintiff bears the burden of establishing both that the defendant committed a constitutional violation and that the law governing the circumstances was clearly established at the time of the violation."). This court is "free to consider these elements in either sequence and to decide the case on the basis of either element that is not demonstrated." *Id.*

Under the circumstances of this case, it is appropriate to first address the "clearly established" law element of the defendants' qualified immunity defense. In addressing this element, the court must consider "whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation [the defendants] confronted." *Brousseau v. Haugen*, 543 U.S. 194, 199 (2004) (citation omitted); *Cottone v. Jenne,* 326 F.3d 1352, 1359 (11th Cir. 2003) ("In making this inquiry, the salient question is whether the state of the law gave the [defendants] fair warning that their alleged conduct was unconstitutional.") (quoting *Hope*, 536 U.S. at 741) (alterations adopted) (quotation marks omitted). "The unlawfulness of a given act must be made truly obvious, rather than simply implied, by the preexisting law." *Youmans*, 626 F.3d at 563 (citation omitted).

As this court recognized in *Henderson*,

[d]uring [the late-1980s and mid-1990s] a class of HIV-positive prisoners twice challenged the ADOC's segregation policy. In the first challenge, the plaintiff's alleged that the segregation of recreational, religious and education programs violated the Rehabilitation Act. The district court denied their claims, and, after a decade of litigation, the Eleventh Circuit Court of Appeals upheld that decision. *See Onishea v. Hopper*, 171 F.3d 1289 (11th Cir. 1999) (en banc). Before the *Onishea* litigation had concluded on appeal, the same class of HIV-positive prisoners challenged

> the same policies, this time under the ADA and the Eighth Amendment. *See Edwards v. Ala. Dept. of Corr.*, 81 F.Supp.2d 1242 (M.D. Ala. 2000) (Thompson, J.). This court found that the plaintiffs' claims in *Edwards* were identical to those denied in *Onishea* and therefore barred under the doctrine of *res judicata*.

913 F.Supp.2d at 1279. Moreover, the Eleventh Circuit had previously held "[t]o the extent that the segregation policy encroaches upon the privacy rights of HIV-positive inmates [recognized under the Fourteenth Amendment], it is a reasonable infringement in light of the inmate interests at stake (both seropositive and general population), and the difficult decisions that the DOC must make in determining how best to treat and control within Alabama correctional facilities the spread of a communicable . . . disease." *Harris v. Thigpen,* 941 F.2d 1495, 1521 (11th Cir. 1991). Thus, it is clear that prior to entry of the decision in *Henderson* the policies adopted by the ADOC with regard to the segregation of HIV-positive inmates had not been deemed unconstitutional or violative of federal law. Instead, these policies had survived challenges to their validity under the ADA, RA and Eighth and Fourteenth Amendments.

As for Taylor's allegation that his wearing a particular color armband violated his right to privacy under the Fourteenth Amendment because this action identified him as an HIV-positive inmate to other inmates, this right has not yet been recognized by either the Alabama Supreme Court, the Eleventh Circuit nor the United States Supreme Court.[10] Research reveals that at the time of the alleged privacy deprivation

> the Eleventh Circuit has not recognized a constitutional violation of an inmate's right to privacy when his or her HIV-positive medical status has

---

[10]Even in *Henderson*, this court addressed the armband policy solely in the context of the ADA. 913 F.Supp.2d at 1313.

been revealed to others within the prison, despite if the disclosure was verbal or non-verbal, incidental or deliberate. *See [Harris v.] Thigpen*, 941 F.2d at [1521]) ("To the extent that the segregation policy encroaches upon the privacy rights of HIV-positive inmates, it is a reasonable infringement in light of the inmate interests at stake (both seropositive and general population)); *Reed v. Allen*, 379 F. App'x. 879 (11th Cir. 2010) (finding prison policy requiring HIV-positive inmates to wear white wristbands did not violate [clearly established] Fourteenth Amendment privacy rights despite policy's result in non-consensual disclosure of HIV-positive status to other inmates); *Anderson v. Romero*, 72 F.3d 518, 525 (7th Cir. 1995) (no constitutional violation when prison official disclosed HIV-positive status of inmate to another officer, inmate, and the barber); *Moore v. Mabus*, 976 F.2d 268, 271 (5th Cir. 1992) (segregation of HIV-positive inmates was reasonable anti-contagion measure even though it incidentally disclosed medical status of infected inmates); *McDaniels v. Strength*, CV 108-110, 2008 U.S. Dist. LEXIS 108525, at *10 (S.D.Ga. Oct. 28, 2008) (Placement of inmate in segregation due to his HIV-positive status was constitutional.); *Burguest v. United States*, 2007 U.S. Dist. LEXIS 102056, 2007 WL 4993269 (S.D.Fla. Dec. 17, 2007), *aff'd on other grounds by*, 316 F. App'x 955 (11th Cir. 2009) (No constitutional violation found where clearly established law did not exist to put defendants on notice that disclosing inmate's HIV-positive status would constitute a violation of federal law.).

*Taylor v. Sherman*, 2014 WL 1259737, at *5, Recommendation of the Magistrate Judge (S.D. Ala. February 26, 2014), adopted as opinion of the Court 2014 WL 1259737, at *1 (S.D. Ala. March 26, 2014).

In *Reed*, the inmate-plaintiff claimed that "Limestone's color-coded wristband policy effectively signified his HIV-positive status to other inmates and thereby violated his [Fourteenth Amendment] privacy rights." 379 F. App'x at 881. The court noted *Harris* "determined that the legitimate penological interests supporting full segregation of HIV-positive inmates outweighed the inmates' privacy rights, whatever they were[,]" and therefore held that "[t]he district court . . . did not err in granting summary judgment for

the Defendants [based on qualified immunity]." *Id*. at 883 ("Even assuming Reed's complaint states a constitutional violation, the Defendants are entitled to qualified immunity because the right Reed asserts was not clearly established. The state of law at the time the Defendants implemented the wristband policy was that, under *Harris*, complete segregation of HIV-positive prisoners was not a constitutional violation. . . . It was not then 'clearly established' to prison officials that requiring color-coded wristbands violated Reed's constitutional privacy right when full segregation did not. In light of *Harris*, Reed has not shown that his privacy right was 'clearly established.'"). In addition, this court has found no decision by the United States Supreme Court, Eleventh Circuit Court of Appeals or the Alabama Supreme Court addressing the constitutional issues in Taylor's favor. As previously stated, the law can be "clearly established" only by one of the aforementioned courts.

It is clear that at the time of the challenged actions the law was not clearly established by an appropriate court such that it would have put a reasonable government actor, including the defendants, on notice that their actions constituted a violation of Taylor's constitutional rights. Absent a violation of clearly established law, the defendants are entitled to summary judgment on the damages claims lodged against them in their individual capacities based on qualified immunity.

### C. Official Capacity Claims for Damages - The ADA and RA

Taylor alleges that the defendants discriminated against him in violation of Title II of the Americans with Disabilities Act and § 504 of the Rehabilitation Act by enforcing

policies which required his placement in segregated housing at Limestone based solely on

his HIV status and forced him to wear an armband that identified him as HIV-positive.

> Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132. Section 504 provides that, "No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).14.  Claims under both statutes are governed by the same standards. *See, e.g.*, *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000); *see also Everett v. Cobb County Sch. Dist.*, 138 F.3d 1407, 1409 (11th Cir. 1998). To state a claim under either statute, the plaintiffs must show: "(1) that [they are] qualified individual[s] with a disability; (2) that [they were] either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or [were] otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff[s'] disability." *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1083 (11th Cir. 2007) (citation omitted); *see also Harris*, 941 F.2d at 1522 (applying those elements in the prison context).  Because the same standards govern claims under both statutes, in the interest of brevity, the court will refer to both as "the ADA."

> The plaintiffs correctly assert (and the ADOC concedes) that HIV is a disability under the ADA….
> * * *

> However, the ADA extends its protections to only individuals claiming discrimination with respect to, or exclusion from, a public entity's services who were "otherwise qualified" for those services. *Onishea*, 171 F.3d at 1300.  "'An otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap.'" *Id.* (quoting *Southeastern Community College v. Davis*, 442 U.S. 397, 406, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979)).

*Henderson*, 913 F. Supp.2d at 1287-1288 (footnotes omitted); *Flournoy v. Culver*, 534 F.

App'x 848, 851 (11th Cir. 2013) (Under both the Americans with Disabilities Act and the

Rehabilitation Act, "a 'qualified individual with a disability' cannot be excluded from

participating in, or be denied the benefits of, services, programs, or activities of a public entity 'by reason of such disability' or 'be subjected to discrimination by' the public entity. *See* 42 U.S.C. § 12132."); *Zukle v. Regents of the University of California*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999) (citations omitted) (Although the Rehabilitation Act contains the additional requirement that the program or activity receive federal funds, 29 U.S.C. § 794, "[t]here is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act."). Both the ADA and RA apply to activities provided to inmates confined in Alabama state prisons. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) ("State prisons fall squarely within the statutory definition of 'public entity[.]'"); *Bircoll*, 480 F.3d at 1081 (It is well settled law "that a disabled prisoner can state a Title II ADA [or RA] claim if he is denied participation in an activity . . . by reason of his disability."). A private person may sue a public official in his official capacity for monetary damages under the ADA and RA "for conduct that *actually* violates the Fourteenth Amendment[.]" *United States v. Georgia*, 546 U.S. 151, 159 (2006) (emphasis in original).

## 1. Damages under *Henderson*

To the extent Taylor maintains that the ruling in *Henderson* lends support to his claim for monetary damages, this assertion is contradicted by the decision issued in *Henderson*.

> First, *Henderson* was a class action certified under Rule 23(b)(2) for injunctive and declaratory relief, not damages. *Henderson*, No. 2:11-cv-00224-MHT, ECF No. 188, at 21-22 (certifying the class). Rule 23(b)(2) contemplates relief for the class as a whole, and it "does not authorize class

certification when each class member would be entitled to an individualized award of monetary damages," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360–61 (2011), and where "monetary relief is not incidental to the injunctive or declaratory relief," *id.* at 360. Second, the consent decree in *Henderson* did not address the question of damages but instead left open the possibility for "individual prisoners with HIV to bring lawsuits for violations of the [ADA] or the [RA], which are not otherwise barred for reasons unrelated to this Order." Doc. No. 18-3, at 22. Third, to the extent [the plaintiff] suggests *Henderson* supports individualized awards to HIV-positive prisoners, the court in *Henderson* emphasized that it was not holding that any *particular* HIV-positive prisoner should be housed with HIV-negative prisoners, but rather "how prisoners should be treated based on their HIV-positive status must depend upon an individual-by-individual assessment of these prisoners that honors each prisoner's rights under the ADA." *Henderson*, 913 F. Supp.2d at 1318. Consequently, even though [the plaintiff] was a member of the class in *Henderson*, he cannot simply cite *Henderson* and expect to receive money damages. The court further concludes that even if damages were available despite the settlement in *Henderson*, [the plaintiff] cannot obtain damages because he has not alleged a physical injury as required by 42 U.S.C. §1997e(e).

*Hatcher v. Thomas*, Civil Action No. 2:14-CV-67-WHA-WC, Recommendation of the Magistrate Judge - Doc. No. 53 at 6-7 (footnote omitted) (emphasis in original), adopted as opinion of the court February 22, 2017 - Doc. No. 54.

## 2. Compensatory Damages

Taylor does not allege that he suffered any physical injury due to the actions about which he complains and the record is devoid of such evidence. The defendants therefore argue that Taylor cannot obtain compensatory damages for alleged violations of the ADA and RA because he fails to allege any physical injury. *Doc. No. 12* at 3-5.

Federal law prohibits prisoners from bringing federal civil actions for mental and emotional injury suffered while in custody without a prior showing of physical injury. 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a

jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury[.]"). This section bars monetary damages unless a prisoner establishes that he suffered a physical injury that is more than *de minimis*. *Brooks v. Powell*, 800 F.3d 1295, 1307 (11th Cir. 2015); *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1312 (11th Cir. 2002). Section 1997e(e) applies to all civil actions filed by prisoners and therefore includes claims presented under the ADA and RA. *Cassidy v. Indiana Dept. of Corrections*, 199 F.3d 374, 376 (7th Cir. 2000) (applying § 1997e(e) to an ADA/RA action to bar damages claims for mental and emotional injuries as the plain language of the statute provides that "[n]o Federal civil action" may be brought by a prisoner when he suffered no physical injury absent creation of an exception by Congress); *C.S. v. Thomas*, 2016 WL 2605531, at *4 (N.D. Ala. Apr. 8, 2016) (ruling that § 1997e(e) applies to cases brought under the ADA and RA and holding that absent a physical injury 42 U.S.C. § 1997e(e) precludes plaintiff from recovering compensatory damages in any federal civil action).

Taylor's allegations regarding segregated housing at Limestone, denial of access to the honor dorm at this facility and the wearing of a red armband do not constitute physical injuries. *See Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir.) (rejecting plaintiff's request to interpret the "'physical injury' . . . part of the statute to mean that *any* allegation of physical injury is sufficient, including physical manifestations of purely mental or emotional injury[,]" and further holding that "allowing prisoners to surmount this . . . statutory hurdle with purely trivial allegations of physical injury would make no

sense in light of our basic understanding that 'routine discomfort' is part of the penalty that criminal offenders pay for their offenses against society."), *reh'g en banc granted, opinion vacated*, 197 F.3d 1059 (11th Cir. 1999), and *opinion reinstated in relevant part on reh'g*, 216 F.3d 970 (11th Cir. 2000) (en banc); *Brooks*, 800 F.3d at 1298 (court held that prisoner alleged no physical injury where prisoner was threatened, taunted, segregated, placed in restraints, had loose stools, was forced to defecate in his own jumpsuit for two days and sit in his own excrement and, therefore could not recover compensatory or punitive damages); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997) (finding that bruised ear which lasted for three days was *de minimis* injury). Taylor is therefore precluded by § 1997e(e) from recovering compensatory damages from the defendants, and his request for such damages is due to be dismissed without prejudice. *Harris*, 216 F.3d at 980 (dismissal in accordance with § 1997e(e) is without prejudice).

### 3. Punitive Damages

Taylor also requests punitive damages in the amount of $200,000 from the defendants for alleged violations of the ADA and RA. This request for damages is foreclosed by applicable federal law. Specifically,

> the Supreme Court has held that punitive damages are not available under Title II of the ADA or § 504 of the Rehabilitation Act. *See Barnes v. Gorman*, 536 U.S. 181, 189 (2002) [("Because punitive damages may not be awarded in private suits brought under Title VI of the 1964 Civil Rights Act, it follows that they may not be awarded in suits brought under . . . the ADA and § 504 of the Rehabilitation Act.") (footnote omitted)]. Additionally, the Eleventh Circuit has held that a prisoner is not entitled to punitive damages under 42 U.S.C. § 1997e(e) without a showing of

physical injury, as discussed previously. *Brooks v. Warden*, 800 F.3d 1295, 1308 (11th Cir. 2015) ("We have held that § 1997e(e) applies to punitive damages, partly because any other interpretation would 'thwart[ ]' Congress's 'evident intent,' and allow prisoners to avoid the PLRA's physical injury requirement 'simply by adding a claim for punitive damages.') (quoting *Davis v. District of Columbia*, 158 F.3d 1342, 1348 (D.C.Cir. 1998)). Therefore, the plaintiff's claims for punitive damages under the ADA and Rehabilitation Act are also due to be dismissed.

*C.S. v. Thomas*, 2016 WL 2605531, at *5. It is therefore clear that Taylor is not entitled to punitive damages from the defendants with respect to claims arising under the ADA and RA.

### D. Declaratory and Injunctive Relief under the ADA and RA

To the extent Taylor seeks declaratory and/or injunctive relief declaring that the ADOC's policies of intentional discrimination and segregation violated the ADA and RA, he is not entitled to this relief. "The court in *Henderson* already made that determination, which led to the injunctive relief set out in the Stipulated Order of September 30, 2013. Doc. No. 18-3; *Henderson*, 913 F. Supp.2d at 1318 ('The policy is also infected . . . by an intentional bias against HIV-positive people.')." *Hatcher v. Thomas*, Civil Action No. 2:14-CV-67-WHA-WC, Recommendation of the Magistrate Judge - Doc. No. 53 at 6-7, adopted as opinion of the court February 22, 2017 - Doc. No. 54; *see also C.S.*, 2016 WL 2605531, at *5 (ruling that inmate could not obtain declaratory relief based on *Henderson* and advising that inmate should seek enforcement of *Henderson* through class counsel). Consequently, Taylor's request for declaratory and injunctive relief with respect to the ADA and RA is due to be dismissed without prejudice. *See C.S.*, 2016 WL 2605531, at *5 (dismissing request for declaratory relief

without prejudice).

### E.  Official Capacity - Constitutional Claims for Monetary Damages

To the extent Taylor lodges constitutional claims against the defendants in their official capacities, the defendants are entitled to absolute immunity from monetary damages.  Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity."  *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).    "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities."  *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

At all times relevant to the complaint, the defendants were state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities.  In light of the foregoing, the defendants are entitled to sovereign immunity under the Eleventh Amendment on those constitutional claims seeking compensatory and punitive damages from them in their official capacities.  *Lancaster*, 116 F.3d at 1429; *Harbert Int'l, Inc. v. James*, 157 F.3d

1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for monetary damages under the Eleventh Amendment); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (monetary damages are unavailable from state official sued in his official capacity).

### F. Constitutional Claims for Declaratory and Injunctive Relief

### 1. Privacy Right under the Fourteenth Amendment

As previously discussed, s*ee supra* at 15-18, and at all times relevant to the complaint, neither the United States Supreme Court, the Eleventh Circuit nor the Alabama Supreme Court has recognized a constitutional violation of an inmate's right to privacy when his HIV-positive status has been revealed to others in prison, regardless of whether "the disclosure was verbal or non-verbal, incidental or deliberate." *Sherman*, 2014 WL 1259737, at *5 (citing *Harris v. Thigpen*, 941 F.2d 1495, 1521 (11th Cir. 1991)). "Although Thigpen was decided over 20 years ago, it is still the law of the circuit." *Id*. at 6. "Based on the firm precedent of the Eleventh Circuit, no constitutional violation can be found on the part of any defendant named in this action for disclosing [the plaintiff's] HIV status. Therefore, any disclosure of [the plaintiff's] HIV-positive status is not a constitutional violation, and [the plaintiff's] right to privacy allegation fails to state a claim upon which relief may be granted." *Id*. at *5. Consequently, the defendants are entitled to summary judgement on this claim.

### 2. Eighth Amendment Claim

Taylor alleges that application of the segregated housing and armband policies

violated his Eighth Amendment rights. *Doc. No. 1* at 7. However, only actions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to establish constitutional violations. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The Eighth Amendment proscribes those conditions of confinement which involve the wanton and unnecessary infliction of pain. *Id*. at 346; *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (same). Specifically, this amendment is concerned with "deprivations of essential food, medical care, . . . sanitation . . . [or] other conditions intolerable for prison confinement." *Id*. at 348 (citation omitted). Conditions within a prison amount to cruel and unusual punishment only when they result in "unquestioned and serious deprivation of basic human needs." *Id*. at 347. "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society[,]" and, therefore, do not constitute cruel and unusual punishment within the meaning of the Eighth Amendment. *Id*. at 347. "The Constitution does not mandate comfortable prisons, and prisons . . . which house persons convicted of serious crimes, cannot be free of discomfort." *Id*. at 349. Although the Constitution "does not mandate comfortable prisons . . . neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes*, 452 U.S. at 349). Thus, it is well-settled that theconditions under which a prisoner is confined are subject to constitutional scrutiny. *Helling v. McKinney*, 509 U.S. 25, 31 (1993).

A prison official has a duty under the Eighth Amendment to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate

food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)); *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 199-200 (1989) (holding that the Eighth Amendment requires the State to provide for a prisoner's "basic human needs – e.g., food, clothing, shelter, medical care, and reasonable safety."). "The Constitution does not require that prisoners, as individuals or as a group, be provided with any and every amenity which some person may think is needed to avoid mental, physical, and emotional deterioration." *Harris*, 941 F.2d at 1511 (internal citation omitted).

For liability to attach, the challenged prison condition must be "extreme" and must pose "an unreasonable risk of serious damage to [the inmate's] . . . health [or safety]." *Crosby*, 379 F.3d at 1289-1290. To demonstrate an Eighth Amendment violation regarding conditions of confinement, a prisoner must satisfy both an objective and a subjective inquiry. *Farmer*, 511 U.S. at 834. The *Farmer* Court identified both objective and subjective elements necessary to establish an Eighth Amendment violation. With respect to the requisite objective elements, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh v. Butler County*, 268 F.3d 1014, 1028-1029 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). As to the subjective elements, "the official must both be aware of facts from

which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837-838; *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."). The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

The living conditions within a correctional facility will constitute cruel and unusual punishment when the conditions involve or result in "wanton and unnecessary infliction of pain, [or] . . . [are] grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes,* 452 U.S. at 347. "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id*. at 347.

A prison official may likewise be held liable under the Eighth Amendment for acting with "'deliberate indifference'" to an inmate's health or safety when the official knows that the inmate faces "a substantial risk of serious harm" and disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S.Ct. 1970, 1974 (1994).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a "'sufficiently culpable state of mind.'"" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991). . . . Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists - and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). "The known risk of injury must be a strong likelihood, rather than a mere possibility before [the responsible official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotations omitted). As the foregoing makes clear, "[m]erely negligent failure to protect an inmate . . . does not justify liability under section 1983[.]" *Id.*

Taylor's allegations regarding segregated housing at Limestone, including his lack of access to the honor dorm and the inability to obtain a transfer to another facility, and the wearing of an armband did not violate his Eighth Amendment rights as these conditions failed to deny him the minimal civilized measure of life's necessities or subject him to a wanton and unnecessary infliction of pain. *Wilson*, 501 U.S. at 298-299;

*Rhodes*, 452 U.S. at 347. The conditions referenced by Taylor, though inconvenient and/or objectionable, were not serious or extreme so as to violate the Constitution. *See Baird*, 926 F.2d at 1289; *C.S. v Thomas*, 2016 WL 2605531, at *6. Furthermore, Taylor's allegations utterly and completely fail to demonstrate deliberate indifference or reckless disregard by the defendants with respect to his health or safety relative to these conditions. Specifically, neither confinement in segregated housing nor the wearing of an armband provided a basis on which an inference could be drawn by the defendants that a substantial risk of serious harm existed to Taylor. Consequently, summary judgment is due to be granted in favor of the defendants on Taylor's claim alleging a violation of the Eighth Amendment.

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The plaintiff's claims for compensatory and punitive damages against the defendants in their individual capacities with respect to his claims arising under the Americans with Disabilities Act and the Rehabilitation Act be DISMISSED with prejudice as there is no individual liability under these statutes.

2. The plaintiff's claims for compensatory and punitive damages against the defendants in their individual capacities regarding his claims arising under the Eighth and Fourteenth Amendments be DISMISSED with prejudice as the defendants are entitled to qualified immunity on these claims.

3.   The plaintiff's request for compensatory and punitive damages from the defendants in their official capacities as to his claims arising under the Americans with Disabilities Act and the Rehabilitation Act be DISMISSED without prejudice.

4.   The plaintiff's request for declaratory and injunctive relief with respect to alleged violations of the Americans with Disabilities Act and the Rehabilitation Act be DISMISSED without prejudice.

5.   The plaintiff's request for monetary damages from the defendants in their official

capacities with respect to his Eighth and Fourteenth Amendment claims be DIMISSED with prejudice as the defendants are entitled to absolute immunity from such damages.

6.   The plaintiff's request for declaratory and injunctive relief from the defendants in their official capacities as to the Eighth and Fourteenth Amendment claims be DISMISSED with prejudice as the defendants did not act in violation of the Constitution.

7.   The defendants' motion for summary judgment be GRANTED.

8.   The costs of this proceeding be taxed against the plaintiff.

9.   Judgment be entered in favor of the defendants.

It is further

ORDERED that on or before **April 26, 2017** the parties may file objections to this Recommendation.   A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered.   Failure to file written objections

to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done this 12th day of April, 2017.

/s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE